David SAMPSON, Plaintiff,

v.

The CITY OF SCHENECTADY, Richard Barnett, and Michael Siler, Individually and as Agents, Servants and/or Employees or Police Officers of the City of Schenectady and the City of Schenectady Police Department, Defendants.

No. 99–CV–1331.

United States District Court,
N.D. New York.

Aug. 16, 2001.

Kevin A. Luibrand, Tobin, Demf Law Firm, Albany, NY, for Plaintiff.

Michael J. Murphy, Carter, Conboy Law Firm, Albany, NY, Joseph R. Cardamone, City of Schenectady Corporation Counsel, Schenectady, NY, William J. Dreyer, Dreyer, Boyajian Law Firm, Michael Louis Koenig, O'Connell, Aronowitz Law Firm, Albany, NY, Eugene E. Napierski, Napierski, Vandenburgh Law Firm, Albany, NY, for Defendants.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is Plaintiff's motion for partial summary judgment as to defendant Siler's and Barnett's liability to him for various violations of federal and state law. For the following reasons Plaintiff's motion is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND

At approximately 8:00 p.m. on the night of July 28, 1999, defendants Barnett and Siler (the "Officers") witnessed Plaintiff

and another male walking eastbound on Lincoln Avenue in the Hamilton Hill area of Schenectady. Because the Officers had previous drug related dealings with Plaintiff which had resulted in various arrests and Hamilton Hill was an area known to them as a place where narcotics were frequently trafficked, they turned their vehicle around and approached Plaintiff. At that point, Plaintiff and his companion allegedly fled onto a nearby porch located at 816 Lincoln Avenue in the City of Schenectady.

As Plaintiff sat on the porch, defendants Barnett and Siler asked him if he lived there. When he stated that he did not know who lived there, the Officers performed a pat down search to ensure that he was not armed.[1] A short time later, a young male arrived and indicated that the home belonged to his aunt. He also stated that he did not know Plaintiff and went to retrieve his aunt. When his aunt arrived, she also stated that she did not know Plaintiff and that Plaintiff did not have permission to be on her porch. Plaintiff stated that he was there to visit the woman's daughter.

The owner of the house allegedly told defendants Barnett and Siler that although she did not want Plaintiff arrested she did want him removed from the area. Although Plaintiff's and the Officer's version of events differ somewhat at this point, neither dispute that Plaintiff was eventually placed in the back of defendant Barnett's and Siler's patrol car[2] and driven outside the city limits of Schenectady. During the drive, Plaintiff alleges that he protested to the Officers and feared for his life. He also alleges that defendant Barnett struck him in the head while he was confined in the back of the police car. Eventually, defendant Siler pulled the car to the side of Rector Road, located in the Town of Glenville, and, according to Plaintiff, defendant Barnett ordered him to stick his feet outside the vehicle. Defendant Barnett then allegedly removed Plaintiff's shoes and threw them into a densely wooded area before throwing Plaintiff to the ground and striking him in the head.[3] Defendant Barnett then reentered the vehicle and drove away from Plaintiff leaving him on the side of Rector Road, stating, "You'll have a long walk back, maybe you should think about moving to Albany."

## II. PROCEDURAL BACKGROUND

On the basis of the events that occurred on July 28, 1999, Plaintiff filed suit against Defendants on August 23, 1999 alleging, in part, that Defendants deprived him of various Constitutional rights and privileges in violation of 42 U.S.C. § 1983 and that Defendants falsely arrested, unlawfully imprisoned, and committed assault and battery against him.[4] During the pendency of the above captioned case, the United

---

1. Plaintiff allegedly consented to have his pockets searched. The search revealed that Plaintiff was not carrying any narcotics or weapons.

2. Plaintiff alleges that Defendants Barnett and Siler forcibly led him from the porch to their patrol car by his belt and that he struck his head on the side of the vehicle. Both defendants Barnett and Siler allege that they did not use force against Plaintiff and that he did not hit his head when placed into their patrol car.

3. Defendant Barnett denies ever striking Plaintiff.

4. Plaintiff also filed claims against the City of Schenectady alleging failure to supervise, failure to train, and that the City had an unconstitutional policy of transporting intoxicated individuals and drug offenders outside the City's jurisdictional limits without cause and against their will.

States Attorney has been investigating both defendants Barnett and Siler for a host of felony charges related to their conduct while employed as police officers for the City of Schenectady. As a result of this ongoing criminal investigation, the Court stayed all discovery related to the charges contained in the instant complaint until July 28, 2000. On January 2, 2001, the United States Attorney sought to intervene and stay discovery once again.

Magistrate Judge Smith denied the United States Attorney's motion to intervene on January 9, 2001 but stayed all depositions of any City of Schenectady representatives until after defendant Siler's criminal trial.[5] Defendant Siler also invoked his Fifth Amendment right against self-incrimination when Plaintiff attempted to serve interrogatories upon him, stating that he would appear for a deposition once the criminal proceedings were resolved. Magistrate Judge Smith subsequently adjourned discovery through June 30, 2001 to ensure that discovery in this case would not prejudice or interfere with defendant Siler's ongoing criminal trial.

Plaintiff filed the instant motion for partial summary judgment as to both defendant Siler's and Barnett's individual liability to him less than one week after Judge Smith stayed discovery.[6] The Officers oppose that motion, *inter alia*, on the grounds that the Court should not use defendant Siler's invocation of his Fifth Amendment rights to draw any adverse inference against him, that Plaintiff has not met his burden of showing that the Officer's actions were the proximate cause

of his alleged injuries, that the Officers are entitled to qualified immunity, that Plaintiff has not provided sufficient proof that either officer assaulted or committed battery against him, and that, pursuant to Federal Rule of Civil Procedure 56(f), because discovery has been stayed they require more time to prepare affidavits and take depositions to defend against the instant motion. The Court will address each of these issues in turn.

## III. DISCUSSION

### A. Standard for Summary Judgment

The standard for summary judgment is well-established. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is genuinely disputed only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in a light most favorable to the nonmoving party. *See City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine

**5.** Defendant Barnett pled guilty on September 18, 2000 to drug distribution and extortion. Defendant Siler pled guilty to various felony charges related to his tenure with the Schenectady Police Department on July 23, 2001.

**6.** Although discovery has been limited at this point due to the various stays issued, Plaintiff's instant motion is based, in part, upon various statements defendant Barnett made in his interrogatory responses and defendant Siler's invocation of the Fifth Amendment.

issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon the movant's satisfying that burden, the onus then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but "must set forth specific facts showing that there is a genuine issue of fact for trial." *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

## B. Section 1983 Claims Generally

■ To succeed on a section 1983 claim, Plaintiff must prove two essential elements: (1) defendants Siler and Barnett acted under color of state law; and (2) as a result of their actions, Plaintiff suffered a denial of his federal statutory or constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir.1998). In the instant case, both defendants Siler and Barnett admit that they were acting under color of law at the time they left Plaintiff on Rector Road. Nevertheless, each contends that they are entitled to qualified immunity for their actions because they were acting pursuant to an informal relocation policy that the City of Schenectady condoned. Additionally, defendant Siler argues that because discovery has been limited, the instant motion for partial summary judgment is premature. Before addressing these issues, the Court must first determine, however, if defendant Siler's and Barnett's actions violated Plaintiff's Fourth Amendment Rights.[7]

### 1. Fourth Amendment Unlawful Seizure Claim [8]

#### a. Seizure

■ The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend IV; *Atwater v. City of Lago Vista*, 532 U.S. 318, ——, 121 S.Ct. 1536, 1543, 149 L.Ed.2d 549 (2001). For purposes of Fourth Amendment analysis a "seizure" occurs when a police officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). A seizure does not occur simply because an officer approaches an individual on the street and asks that person a few

7. Plaintiff's complaint also alleges that Defendants violated his Fourteenth Amendment rights to due process and equal protection and a general right to personal security and safety. Because his motion for partial summary judgment does not address these other federal claims, the Court's discussion is limited only to those claims which he raised in the instant motion.

8. To the extent that Plaintiff's Fourth Amendment cause of action seems to hold defendants Siler and Barnett liable for their allegedly unlawful search of his pockets, the Court denies without prejudice Plaintiff's motion for partial summary judgment as it relates to this claim. Relevant to this conclusion is the record's silence with regard to defendant Siler's actions and explanation as to why Plaintiff was initially stopped and searched. Additionally, the Court notes that defendant Barnett has testified that Plaintiff consented to have his pockets searched. Thus, to the extent that Plaintiff is claiming that his rights were violated because of this search, material issues of fact related to it remain outstanding and preclude the Court from granting summary judgment to Plaintiff at this time.

questions. *See id.; Brown v. City of Oneonta,* 221 F.3d 329, 340 (2d Cir.2000).

 Instead, Courts apply the reasonable person standard to determine whether a seizure under the Fourth Amendment has occurred. *See Glass v. Mayas,* 984 F.2d 55, 58 (2d Cir.1993). If a reasonable person would not believe that he or she may leave the custody of the officer, then a seizure under the Fourth Amendment has occurred. *See Brown,* 221 F.3d at 340. To help determine whether this threshold has been met, courts may examine a variety of factors, including the threatening presence of several officers, the display of weapons, the officer's physical touching of the seized person, language indicating that compliance with the officer is mandatory, and an officer's request that the seized person accompany him to the police station. *See Cruz v. Miller,* 255 F.3d 77, 82 (2d Cir. 2001); *United States v. Hooper,* 935 F.2d 484, 491 (2d Cir.1991).

 In the instant suit, the Court holds that Plaintiff was seized within the meaning of the Fourth Amendment. Neither defendant Barnett or Siler dispute that they were carrying badges, weapons, and uniforms when they approached Plaintiff. Additionally, defendant Barnett, although not expressly admitting that either he or defendant Siler ordered Plaintiff to enter his police vehicle, did admit to placing his hands on Plaintiff and to transporting him outside Schenectady's jurisdictional limits long after dark without telling him where they were going.[9] Moreover, defendant Barnett admitted to threatening Plaintiff

at the time the seizure ended by telling him that "he would have a long walk back to Schenectady, and to think about moving to Albany."

Because of these undisputed facts, this Court finds, as a matter of law, that no reasonable person in Plaintiff's circumstances would have felt that it was possible to voluntarily leave the custody of defendants Siler and Barnett. The overall context of their conduct was both menacing and ominous, leaving Plaintiff with no choice but to comply with the demands of two officers clothed with the mantle of state authority. Consequently, Plaintiff was seized within the meaning of the Fourth Amendment when the Officers placed him in the back of their police car. The question that the Court must now address is whether the seizure of Plaintiff was reasonable.

b. Reasonableness of Seizure

A police officer's seizure of a person violates the Fourth Amendment only when it is unreasonable. *See* U.S. Const. amend. IV. The need to balance legitimate law enforcement needs against the citizen's right to be protected from police abuse has resulted in a carefully crafted legal framework, developed over two centuries, that guides courts when undertaking an analysis as to whether a particular seizure is reasonable. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Brown v. City of Oneonta,* 235 F.3d 769, 775 (2d Cir.2000). Three levels of interaction between law enforcement officials and citizens exist under this framework. *See id.*

---

**9.** Plaintiff's complaint might also be read to include an allegation that his seizure occurred before he was actually placed in the Officers' cruiser. Because his motion papers do not attempt to move for summary judgment on any such claim and material issues of fact remain outstanding as to what actually transpired between Plaintiff and the Officers before he was placed in the patrol car, the Court does not address these events in the present opinion. Instead the Court's discussion of Plaintiff's seizure claim is limited to events that transpired from the moment he was placed in the patrol car.

■ The first type of interaction occurs when a police officer and citizen engage in consensual discourse. *See United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995). Consensual discourse does not require any police justification as "long as the police do not convey a message that compliance with their request is required." *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir.1992) (quoting *Bostick*, 501 U.S. at 435, 111 S.Ct. 2382). Investigative detentions, otherwise known as "Terry Stops" and based upon *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, require a police officer to have reasonable suspicion that criminal activity has occurred or is about to occur. *See Glover*, 957 F.2d at 1008.

■ Terry Stops, because they are investigative in nature, must be brief and "reasonably related in scope to the circumstances which justified the intervention in the first place." *See Terry*, 392 U.S. at 20, 88 S.Ct. 1868 (1968). In effect, a detention pursuant to *Terry*, can not "last longer than is necessary to effectuate the purposes of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). The third type of encounter between a police officer and a citizen is an arrest. *See Tehrani*, 49 F.3d at 58. For an arrest to be legal, the officer must have probable cause to believe that a crime has occurred. *See id.* Consequently, a police officer's decision to detain or handcuff a person is not unreasonable if the officer has probable cause to believe that the person presents a risk of harm to himself or to others. *See Kerman v. City of New York*, 2001 WL 845442, at *5, 261 F.3d 229, 237 (2d Cir.2001).

In the instant case, Plaintiff's encounter with the Officers, as already discussed, was not consensual. Additionally, Plaintiff was never formally arrested for any crime as a result of his encounter with the Officers, nor have the Officers claimed that they had probable cause to believe that Plaintiff presented a risk to himself or others. As a result, the Court must analyze whether the Officer's actions were reasonable pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Drawing all inference in light of defendants Siler and Barnett, it is possible that they had some articulable and reasonable suspicion that Plaintiff was actually involved in elicit narcotics activity when they stopped him.[10] Assuming for purposes of this motion that they did have reasonable suspicion to believe that Plaintiff was engaged in a narcotics transaction at the time they stopped him and that their search of Plaintiff was legally justified, that suspicion evaporated when they discovered that Plaintiff was not carrying any narcotics. Again, drawing all inferences in light of defendants Siler and Barnett, it is possible that as reasonable suspicion for any alleged narcotics infraction

---

10. The Court does note, however, that it is highly dubious of this assumption given that the Officers have not provided any articulable reasons or founded suspicions as to why they believed Plaintiff was engaged in a narcotics transaction at the time they stopped him. To date, the Officers' basis for reasonable suspicion is premised on the facts that Plaintiff was in a drug infested neighborhood and had previous drug related encounters with the Officers. These attempted justifications, without additional evidence indicating that Plaintiff was actually involved in an illegal narcotics transaction, such as testimony from the Officers that they witnessed Plaintiff transfer narcotics, money, or drug paraphernalia between himself and someone else, does not give rise to any "reasonable grounds" that a crime had occurred or that it was necessary for them to intrude on Plaintiff's "personal security" by stopping him. *See Sibron v. New York*, 392 U.S. 40, 63, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

vanished, the Officers obtained reasonable suspicion that Plaintiff was trespassing on the 816 Lincoln Avenue premises.[11] Assuming this to be the situation, the Officers could have continued to detain Plaintiff after their initial search and stop ended to determine whether he was in fact trespassing. Nevertheless, even if the Court accepted that the Officers had reasonable suspicion to conclude that Plaintiff was trespassing, their subsequent actions grossly exceeded anything allowable under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Instead of pursuing a valid line of investigation regarding any possible trespassing charge, the Officers completed their questioning of Plaintiff, and without formally arresting him, proceeded to drive him onto a deserted road many miles from where they stopped him in the dark of night before releasing him. This conduct flatly violated the "scope and duration" requirements of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), as it was not remotely related to the allegedly justified stop in the first place nor was it confined in duration to effectuate the purposes of the trespassing investigation. Consequently, Plaintiff is entitled to summary judgment on this claim assuming that the Officers' other arguments do not preclude such a result.

### 2. *Fourth Amendment Excessive Force Claim*

 Fourth Amendment claims against police officers for excessive use of force, deadly or not, in the course of an arrest, investigative stop, or other seizure are analyzed according to whether the application of force is reasonable, both as to when and how it is applied. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to determine whether an officer's use of force meets the Fourth Amendment's reasonable standard, a court must carefully balance the "the nature and quality of the intrusion against the countervailing government interest at stake." *Kerman,* 2001 WL 845442, at *6–7, 261 F.3d 229, 238–39 (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865). This inquiry "is an exclusively objective one, and requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill v. Schott,* 141 F.3d 412, 417 (2d Cir.1998).

 As an initial matter, the Court notes that Plaintiff's claim for excessive force appears to be limited to defendant Barnett's alleged strikes to Plaintiff's head when he was confined in the back of the Officers' police cruiser and when he was removed and left on the side of Rector Road.[12] At the risk of stating the obvious, at the time defendant Barnett allegedly struck Plaintiff the first time, Plaintiff was confined in the back of the Officers' police car, having already been subdued. When defendant Barnett released Plaintiff and struck him again, the circumstances re-

---

**11.** In light of the fact that the owner of the 816 Lincoln Avenue residence stated that Plaintiff did not have permission to be there, this supposition is not, given the procedural posture of this motion, unreasonable.

**12.** Plaintiff's complaint might also be read to include a claim for excessive force regarding the treatment he received when placed into the Officers' car. However, because his motion papers do not attempt to move for summary judgment on any excessive force claim relating to events that occurred prior to his placement in the police car, to the extent that Plaintiff seeks to assert such a claim against Defendants, the Court does not address it in the present opinion.

mained unchanged. Plaintiff, although released from the Officers' car, was still unarmed and did not pose any objective risk to the Officers' safety.

Because of these facts, defendant Barnett had absolutely no justification for utilizing any force against Plaintiff at either of these times. In a civilized society tempered by the rule of law, law enforcement officials play a critical role in protecting those that have no power from those that seek to abuse power. Because of this special role, it is sometimes necessary for law enforcement officials to utilize force against individuals who seek to transgress the fundamental rules of society.

When as here, however, it is alleged that those entrusted with this power violate the trust granted them as part of the social compact and take an innocent person off of the street, assault him, and leave him by the side of the road, the Court would not hesitate to sanction such repugnant conduct by granting Plaintiff summary judgment if the facts, as alleged, remained undisputed. That, however, is not the situation presented. Defendant Barnett vigorously denies striking Plaintiff at any point during his altercation with him and defendant Siler's invocation of the Fifth

Amendment fails to provide any corroboration of Plaintiff's version of events.

This is not to say that the Court discredits or even disbelieves Plaintiff's version of events relating to the alleged assaults. Rather, because material issues of fact remain outstanding as to whether defendant Barnett did in fact utilize force against Plaintiff in the manner alleged, the Court cannot usurp the fact-finding role of the jury and grant Plaintiff summary judgment as to his Fourth Amendment claim at this time. As a result, Plaintiff's motion for partial summary judgment as it relates to his Fourth Amendment excessive force claims is denied. *See generally Thomas v. Roach*, 165 F.3d 137, 143–44 (2d Cir.1999) (reversing a lower court's grant of summary judgment to defendants on a Fourth Amendment excessive force claim when conflicting affidavits raised a material issue of fact regarding the events in question).[13]

3. *Fourth Amendment and State Law False Arrest and Unlawful Imprisonment Claims* [14]

 Under New York law, the four elements of false arrest are: "(1) the de-

---

**13.** For this reason, the Court also denies Plaintiff's motion for partial summary judgment as it relates to each of his state law battery claims against defendant Barnett. The Court addresses Plaintiff's assault claim against defendant Siler under the section of this opinion dealing with his invocation of the Fifth Amendment.

**14.** A section 1983 claim for false arrest, premised "on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). Moreover, although Plaintiff attempts to assert a claim for "unlawful imprisonment," New York does not necessarily recognize any such

civil cause of action. Instead, "unlawful imprisonment" under New York law usually refers to a specific criminal violation. *See generally* N.Y. Penal Law § 135.05 (McKinney 2001). At the same time, New York does recognize a civil cause of action for "false imprisonment." *See generally Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991). However, the terms "false arrest" and "false imprisonment" are largely synonymous as false imprisonment starts at the moment of arrest. *See* 59 N.Y. Jur.2d False Imprisonment § 1 (1987); *Posr v. Doherty*, 944 F.2d at 96 (citing *Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 334 N.Y.S.2d 632, 638, 285 N.E.2d 871 (1972)). Accordingly, the Court will treat Plaintiff's claim for "unlawful imprisonment" as, in effect, a claim for "false imprisonment" and will address both his section 1983 and

fendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975); *Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992). The tort of false arrest is derived from the common law action for trespass and is designed to protect an individual's "personal interest of freedom from restraint." *Broughton,* 37 N.Y.2d at 456, 373 N.Y.S.2d 87, 335 N.E.2d 310. Here, neither side disputes that defendants Siler and Barnett intended to confine Plaintiff, that Plaintiff was conscious of the confinement, or that Plaintiff did not consent to the confinement. Instead, each argues that if they are given the time to depose Plaintiff, they can establish that they had probable cause to arrest him for trespassing and thereby defeat his motion for summary judgment as it relates to his false imprisonment claim. *See Diesel v. Town of Lewisboro,* 232 F.3d 92, 105 n. 8 (2d Cir.2000) (noting that probable cause defeats a claim for false imprisonment under New York law).

■ In this Court's view, given that the Officers expressly disavowed the trespassing arrest when they failed to book Plaintiff or otherwise charge him for the offense before releasing him on Rector Road, they cannot now raise that charge as a defense to Plaintiff's false imprisonment claim. *See Santiago v. Fenton,* 891 F.2d 373, 383 (1st Cir.1989). If the Court allowed the Officers to pursue this line of inquiry, it would, in effect, retroactively validate their removal of Plaintiff to Rec-

tor Road based on earlier conduct that never resulted in an actual arrest or any formal charges against Plaintiff. *Cf. Sheehy v. Town of Plymouth,* 191 F.3d 15, 21 (1st Cir.1999). Although the Second Circuit has not directly addressed this issue, the Tenth Circuit, in adopting a similar rule to that discussed by the First Circuit in *Santiago* and *Sheehy,* noted sensibly that "to the extent that some level of cause is required before a valid detention is made, the detention should relate to the cause that makes it valid." *See Anaya v. Crossroads Managed Care Sys., Inc.,* 195 F.3d 584, 592 (10th Cir.1999).

In the instant case, even if the Officers were able to establish probable cause as to their trespassing claim against Defendant, their transport of him outside the City of Schenectady's jurisdictional limits without formally charging him for this offense is not remotely related to any alleged violation of New York law by Plaintiff. Even more directly, the New York Court of Appeals has explicitly declared that police officers are not privileged to arrest a person "for the sole purpose of running him out of town or, ... once having arrested such a person, to follow a practice of running him out of town to avoid guardhouse chores for the police." *Parvi v. City of Kingston,* 41 N.Y.2d 553, 558, 394 N.Y.S.2d 161, 362 N.E.2d 960 (1977).[15] The *Parvi* Court further held that an officer's entitlement to claim privilege for any arrest is "defeasible." *Id.* at 558, 394 N.Y.S.2d 161, 362 N.E.2d 960. In other words, an officer's ability to claim privilege "is destroyed if the act is done for any purpose

pendent state law false arrest and imprisonment claims together in this portion of the opinion by referring to them collectively as claims for "false arrest."

**15.** In *Parvi* the plaintiff, drunk at the time of the events underlying his complaint, filed a

false imprisonment claim against two officers who drove him outside their city limits and abandoned him on an isolated and unlit golf course pursuant to "standard operating procedure" so that Plaintiff could "dry out." *Parvi,* 41 N.Y.2d at 555, 394 N.Y.S.2d 161, 362 N.E.2d 960.

other than the protection or advancement of the interest in question." *Id.*

In this case, it is undisputed that the Officers took Plaintiff out to Rector Road without formally charging him with any violation. When combined with the admitted fact that defendant Barnett vaguely threatened Plaintiff after releasing him by stating, "You'll have a long walk back, maybe you should think about moving to Albany," any claim of privilege for the conduct based upon probable cause to arrest him for trespassing evaporated. It is, as Plaintiff points out, preposterous for the Officers to argue privilege based upon probable cause when the facts indicate that their actions were based upon some motive other than protecting Plaintiff or advancing their trespassing investigation against him. As such, assuming that the Officers are not entitled to qualified immunity or can otherwise defeat Plaintiff's motion for partial summary judgment as it relates to his Fourth Amendment and state law false arrest claims, the Court will grant his summary judgment request as to the Officers' liability on these claims at this point in the litigation.[16]

## C. Qualified Immunity

1. *General Standard for Qualified Immunity*

 The affirmative defense of qualified immunity "shields public officials from liability for their discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hathaway v. Coughlin,* 37 F.3d 63, 67 (2d Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In short, the Constitutional right "must be sufficiently definite so that the official understood that his actions violated it or, in other words, that the unlawfulness of his actions was evident." *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988). To determine whether a particular right was clearly established at the time of the alleged violation, courts should consider:

(1) whether the right in question was defined with "reasonable specificity;" (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991). "Absent extraordinary circumstances, if the law was clearly established," the defendant official is not entitled to assert a qualified immunity defense "since a reasonably competent public official should know the laws governing his conduct." *Frank v. Relin,* 1 F.3d 1317, 1328

---

**16.** Because defendant Siler cannot adduce facts to counter the statements of defendant Barnett and Plaintiff that he and defendant Barnett took Plaintiff from Lincoln Avenue to Rector Road, his arguments concerning Federal Rule 56(f) as it relates to the Fourth Amendment claims against him lack merit. Particularly, the Court notes that the affidavit of Shawn F. Brousseau, submitted in support of his Rule 56(f) arguments, does not attempt to dispute that he participated in the transport of Plaintiff to Rector Road. Instead, that affidavit stated that if additional discovery time was granted defendant Siler could coun-

ter Plaintiff's Fourth Amendment claims by obtaining further evidence to support his qualified immunity and probable cause arguments. Because the Court concludes, for reasons explained elsewhere in this Opinion, that his qualified immunity argument fails as a matter of law and his probable cause argument is irrelevant, it will not utilize Federal Rule of Civil Procedure 56(f) to deny Plaintiff's motion for partial summary judgment as to his Fourth Amendment seizure and false arrest claims against defendant Siler. *See Gurary v. Winehouse,* 190 F.3d 37, 44 (2d Cir.1999).

(2d Cir.1993) (quoting *Harlow,* 457 U.S. at 819, 102 S.Ct. 2727).

### 2. *Establishment of Fourth Amendment Precedent Related to Unlawful Seizure, False Imprisonment, and Unlawful Arrest*

Defendant Barnett argues that Fourth Amendment "seizure" jurisprudence was not clearly established at the time he transported Plaintiff to Rector Road because no case law specifically addressing this point could be found. Although the Court accepts defendant Barnett's premise regarding the lack of existing case law directly on point with the instant case, he misstates the relevant inquiry. The Court's concern is not with the fact that no explicit case law expressly declared that a person who may be guilty of an offense such as trespass cannot be transferred to another locus without being charged. Instead, the question is whether "in light of pre-existing case law," the unlawfulness of that action was apparent. *See Wilson v. Layne,* 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

 It is the opinion of this Court that, in light of the long standing precedents of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its requirement that an investigative stop without a formal arrest cannot "last longer than is necessary to effectuate the purposes of the stop," *Royer,* 460 U.S. at 500, 103 S.Ct. 1319, the unlawfulness of transporting an individual to an unknown and isolated area for no justified reason is apparent. The ability to claim that the law was not settled with regard to Plaintiff's Fourth Amendment false arrest claim is even more tenuous given that his false arrest claim turns on an interpretation of state law and that the New York Court of Appeals had outlawed conduct of this type back in 1977. *See Parvi v. City of Kingston,* 41 N.Y.2d 553, 394 N.Y.S.2d 161, 362 N.E.2d 960 (1977). Given these facts, the Court holds that as a matter of law "a reasonable defendant official would have understood that" actions of the sort at issue in this case were unlawful. *See Jermosen,* 945 F.2d at 550. Accordingly, if the Officers are not able to prove that extraordinary circumstances existed that could possibly excuse their conduct, their claims for qualified immunity will fail regardless of the amount of discovery the Court affords them.

### 3. *Extraordinary Circumstances*

Both defendants Siler and Barnett argue that even if their actions violated clearly established Fourth Amendment mandates, the City of Schenectady's unofficial relocation policy and negligent training of them gave rise to "extraordinary circumstances" that might still support their qualified immunity claims. Citing *Dunton v. County of Suffolk,* 729 F.2d 903 (2d Cir.1984), the Officers claim that if they are able to show the existence of such a policy or negligent training, they can shift at least part, if not all, of their liability to the City of Schenectady. *See Dunton,* 729 F.2d at 907. Moreover, each argues that because no discovery has taken place with regard to the City of Schenectady's alleged policy and improper training, the Court should not grant Plaintiff summary judgment against them without first granting them the right to conduct discovery regarding their extraordinary circumstances argument. *Cf. Ricciuti v. New York City Transit Auth.,* 796 F.Supp. 84, 88 (S.D.N.Y.1992) (noting that "[c]onceptually, at least, the officers could claim a good faith, qualified immunity [defense] based in part on improper or inadequate training.")

The Court disagrees with the Officers. A claim of municipal liability and improper training does in some circumstances entitle

an officer to qualified immunity if the officer can show that his actions were within the scope of his official duties. *See Wilson,* 526 U.S. at 617, 119 S.Ct. 1692 (1999); *see also Ford v. Moore,* 237 F.3d 156, 165 (2d Cir.2001). However, because an official's entitlement to qualified immunity is defined in "essentially objective terms," *Harlow,* 457 U.S. at 819, 102 S.Ct. 2727, an official municipal policy, custom, or negligent training claim is relevant to that defense only to the extent that the policy makes otherwise unlawful conduct reasonable, *see Wilson,* 526 U.S. at 617, 119 S.Ct. 1692. Thus, assuming the existence of such a policy or training, it "of course could not make reasonable a belief that was contrary to a decided body of case law." *Id.*

▉ Recognizing this, the few Courts to address those "extraordinary circumstances" when an official might violate clearly established law but nevertheless still be entitled to qualified immunity have applied this exception in those limited situations when the defendant was so prevented from knowing that his actions were unconstitutional that "he should not be imputed with knowledge of an admittedly clearly established right." *Robinson v. Bibb,* 840 F.2d 349, 350 (6th Cir.1988); *see also V1 Oil Co. v. Wyoming Dep't of Envtl. Quality,* 902 F.2d 1482, 1488–89 (10th Cir. 1990); *Skevofilax v. Quigley,* 586 F.Supp. 532, 539 n. 6 (D.N.J.1984) (stating that the "extraordinary circumstances" exception to the rule that a qualified immunity defense fails when a defendant violates clearly established rights applies only "rarely"). Typically, this occurs when an official relies on faulty legal advice from counsel and

proceeds to engage in unlawful conduct, "although reliance on legal advice alone does not, in and of itself, constitute an 'extraordinary circumstance' sufficient to prove entitlement to the exception to the general *Harlow* rule." *York v. Purkey,* 2001 WL 845554, at *3–4, 2001 U.S.App. LEXIS 16754, at *12–*13 (6th Cir. July 20, 2001) (quoting *Buonocore v. Harris,* 134 F.3d 245, 253 (4th Cir.1998)); *see also V–1,* 902 F.2d at 1488.

▉ In this Court's view, even if the Officers' assertions were given full credit and borne out by discovery, their claims of negligent training and unlawful policy do not create the type of "extraordinary circumstances" needed to invoke the exception to the general *Harlow* rule. This is so because municipal liability for negligent training and unlawful policies are typically incorporated into section 1983 claims of the type found here. If the Court were to conclude that a claim for negligent training or an unlawful policy on the part of a municipality entitled an official to avoid liability even if their actions violated clearly established constitutional rights, the "extraordinary circumstances" exception to *Harlow* would become nullified as any officer could claim the exception to the rule simply because a Plaintiff filed suit against the municipality as well as the individual officer. Moreover, given the clarity of existing case law and the flagrancy with which the Officers violated it, the Court will not allow their city policy and negligent training claims to cloak their unlawful conduct with the veil of objective reasonableness. *See Wilson,* 526 U.S. at 617, 119 S.Ct. 1692.[17]

---

17. The Officers also argue that because Plaintiff has not met his burden of proving damages on any of his claims that he is not entitled to summary judgment. The Court refuses to accept this argument as it is well settled that a Court may find that a Constitutional violation has occurred even in the absence of "actual compensable injury." *See Amato v. City of Saratoga Springs,* 170 F.3d 311, 317 (2d Cir.1999). When this occurs, a Court simply awards a litigant nominal damages. *See id.; see also Alexander v. Schenk,*

### D. Defendant Siler's Invocation of the Fifth Amendment

██ Up to this point in the Court's discussion of the individual liability of defendant Siler, it has not needed to draw any adverse inferences from his invocation of the Fifth Amendment because defendant Barnett's and Plaintiff's version of events provided sufficient information to allow the Court to hold, as a matter of undisputed fact, that he and defendant Barnett knowingly transported Plaintiff from Lincoln Avenue to Rector Road on the night of July 28, 1999.[18] The Court's ability to do this, however, ends when confronted with Plaintiff's attempt to move for partial summary judgment against defendant Siler for assault. Plaintiff's assault claim is based upon the allegation that defendant Siler motioned as though he was going to strike Plaintiff when defendant Barnett initially placed him in their police vehicle. Plaintiff further alleges that because he had an apprehensive and imminent fear of contact by defendant Siler due to this action, he is entitled to summary judgment on this claim.

Plaintiff further argues that because defendant Siler invoked his Fifth Amendment right against self-incrimination when asked about the alleged assault, he has not denied that it occurred. In effect, if the Court accepted Plaintiff's argument it would deem defendant Siler's invocation of the Fifth Amendment when queried about the alleged assault an admission of Plaintiff's version of events. The Court declines to do so for a variety of reasons.

██ First among these is the fact that even though defendant Siler failed to contest Plaintiff's version of the event when he invoked his Fifth Amendment right, he did deny these assault allegations in his answer to Plaintiff's complaint. Although this alone does not serve to create a material issue of fact necessary to defeat Plaintiff's motion for partial summary judgment, the Court is also mindful of the need to accommodate both Plaintiff's and defendant Siler's interests in the current litigation. *See Centennial Life Ins. Co. v. Nappi*, 956 F.Supp. 222, 228 (N.D.N.Y. 1997). Although, a Court is entitled to draw an adverse inference against a party to a civil action that refuses to testify under the Fifth Amendment, *see Baxter v. Palmigiano*, 425 U.S. 308, 320, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), there is no requirement for the Court to do this. In fact, the drawing of an adverse inference against a litigant who invokes the Fifth Amendment is a harsh remedy that is normally employed to counter a defendant's desire to obstruct discovery or abuse the privilege against self-incrimination. *See United States v. 4003–4005 5th Ave.*, 55 F.3d 78, 84–85 (2d Cir.1995); *Securities and Exch. Comm'n v. Benson*, 657 F.Supp. 1122, 1129–30 (S.D.N.Y.1987).

██ In the instant case, discovery has been repeatedly stayed due to the ongoing criminal investigation and trial of defendant Siler. At no time has defendant Siler sought to obstruct the continued prosecution of this civil case or attempted to abuse his privilege against self-incrimination. Instead, he has repeatedly stated that once his criminal trial concludes he will allow Plaintiff to depose him. Given that defendant Siler's criminal trial has recently concluded and that it is highly likely that any such deposition of him might indicate that

---

118 F.Supp.2d 298, 303 (N.D.N.Y.2000) (holding that even though the plaintiff failed to prove that he suffered a meaningful injury, he was nevertheless entitled to nominal damages for the defendants' violation of his First Amendment rights).

**18.** Moreover, as pointed out in footnote 16, defendant Siler has not explained to the Court how additional discovery will somehow cast doubt on Plaintiff's and defendant Barnett's statements.

Plaintiff's version of events is contested, the Court denies without prejudice Plaintiff's motion for partial summary judgment as it relates to his assault claim against defendant Siler as premature. *See* Fed. R.Civ.P. 56(f); *see also Crystalline H₂O, Inc. v. Orminski,* 105 F.Supp.2d 3, 10 (N.D.N.Y.2000).[19]

## IV. CONCLUSION

In sum, Plaintiff is granted summary judgment as to the Officers' liability to him for violating his Fourth Amendment seizure rights as well as his Fourth Amendment and state law false arrest rights. Plaintiff's motion is denied in all other respects as specified in the terms of the Opinion.

Accordingly, it is hereby

ORDERED that Plaintiffs' motion for partial summary judgment as to the individual liability of defendants Siler and Barnett is GRANTED in part and DENIED in part; and it is further

ORDERED that the Clerk of the Court shall serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

---

**19.** Plaintiff argues that the Court should not utilize Rule 56(f) to bar any of its claims against defendant Siler, in part, because he did not submit an affidavit from himself and the affidavit that his attorney submitted was not verified. The Court rejects this argument. Rule 56(f) as interpreted by the Second Circuit only requires that a party submit an affidavit showing (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort has been made to obtain these facts, and (4) why the affiant was unsuccessful in these efforts. *See Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995). This does not mean that a party to the suit must submit or verify the affidavit submitted in support of their Rule 56(f) argument. Instead the affidavit submitted must be based on the affiant's personal knowledge. *See Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986). The affidavit of defendant Siler's attorney, Shawn F. Brousseau, meets these standards as attorney Brousseau had personal knowledge of the various stays issued in the present case. Moreover the Court reads this affidavit to assert that because defendant Siler will be able to provide specific information to counter the facts underpinning Plaintiff's assault claim, the Court should not grant summary judgment against him without giving him an opportunity to place these facts into the record.