Markos **PAPPAS**, Plaintiff,

v.

**NEW HAVEN POLICE DEPARTMENT, et al., Defendants.**

**No. CIV. 3:98 CV 981(HBF).**

United States District Court, D. Connecticut.

Aug. 29, 2003.

Markos Pappas, Otisville, NY, for plaintiff.

Thomas W. Ude, Jr., Martin S. Echter, Office of Corporation Counsel, New Haven, CT, for defendants.

## RULING ON DEFENDANTS' MOTION FOR JUDGMENT, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

FITZSIMMONS, United States Magistrate Judge.

### I. INTRODUCTION

This case was tried to a jury from November 19 to November 21, 2002. As articulated in the responses to interrogatories submitted to it, the jury found that plaintiff proved, by a preponderance of the evidence, that defendants Thomas Benedetto and Karen Hale Roberts acted under color of state law; that neither of those

defendants proved, by a preponderance of the evidence, that there was probable cause to arrest plaintiff or that plaintiff consented to being in custody; and that plaintiff proved, by a preponderance of the evidence, that plaintiff's arrest without probable cause was a proximate cause of the constitutional violation of which plaintiff complained. [Revised Jury Interrogatories (doc. # 109) at ¶¶ 1–6.] The jury also found that plaintiff proved, by a preponderance of the evidence, that defendant Brian Sullivan acted under color of state law, and caused defendants Benedetto and Hale Roberts to commit or continue the constitutional violation, and that the conduct of defendant Sullivan was a proximate cause of the constitutional violation. [*Id.* ¶¶ 7–9.] The jury further found that the municipal defendant—the City of New Haven—both had a policy with a causal connection to the deprivation of plaintiff's constitutional rights, and failed to train or supervise its employees in an area likely to lead to the deprivation of a citizen's constitutional rights. [*Id.* ¶¶ 10–11.] As a result, the jury awarded plaintiff actual damages in the amount of $4,000, and punitive damages in the amount of $20,000 ($5,000 each against defendants Benedetto and Hale Roberts; and $10,000 against defendant Sullivan). [*Id.* ¶¶ 12–14.] Finally, the jury answered special interrogatories on factual issues likely to affect the issue of damages and the court's determination of certain legal issues, including qualified immunity. [*Id.* ¶¶ 15–17.[1]]

On December 6, 2002, defendants renewed their motion for judgment as a matter of law, and, in the alternative, moved for a new trial. [**Doc. # 110.**] Plaintiff timely opposed that motion. [*Doc. # 113.*] For the reasons stated below, the motion is **DENIED.**

## II. *RELEVANT PROCEDURAL HISTORY*

On March 14, 2001, the court ruled on defendants' first motion for summary judgment. [Doc. # 43.[2]] In that Ruling and Order, the court granted defendants' motion "as to all claims against the New Haven Police Department and claims that he was improperly arrested for possession of the cocaine found in the police car" and denied the motion "in all other respects." [*Id.* at 20–21.]

On July 24, 2001, the City of New Haven moved for summary judgment on plaintiff's newly added municipal liability count. [*See* docs.## 58, 65.] On November 16, 2001, the court denied the municipal defendant's motion, holding that "a reasonable jury could be convinced that . . . the City's policymakers should have known that inadequate training or supervision was so likely to result in the violation of constitutional rights, that the policymakers of the [C]ity can reasonably be said to have been indifferent to the need." [Doc. # 66 at 14–15 (citations and internal quotations omitted; bracketed form in original).]

On November 20, 2002, at the close of plaintiff's case at trial, defendants moved orally for judgment as a matter of law. On November 21, 2002, the court issued a written ruling [doc. # 103], granting in

---

1. The jury found that there was insufficient evidence to answer interrogatory 17.

2. As the court noted in its Discussion section, defendants raised "six grounds in support of their motion for summary judgment: (1) plaintiff is not entitled to the relief he seeks; (2) there was probable cause to arrest plaintiff before the search; (3) there was a reasonable suspicion to detain plaintiff before the search; (4) the individual defendants are entitled to qualified immunity; (5) defendants Ratti, Coppola and Collier were neither present at nor participated in plaintiff's detention; and (6) the New Haven Police Department is not an entity that can be sued." [Doc. # 43 at 7.]

part and denying in part the oral motion for judgment. The motion was granted as to all claims against defendant Rodriguez, and denied as to defendants Hale Roberts, Benedetto, Sullivan, and the City of New Haven. [Doc. # 103 at 16.] Decision was reserved on the issues of qualified immunity for each of the individual defendants until after the jury made its findings. [*Id.*]

Defendants filed their renewed motion for judgment or, in the alternative, for a new trial [doc. # 110] on December 6, 2002. Plaintiff opposed the motion on January 23, 2003. [Doc. # 113.]

Prior to the filing of plaintiff's opposition, but after the filing of defendants' motion, the court, on January 10, 2003, issued its Ruling on Reserved Issue of Qualified Immunity. [Doc. # 111.] In that decision, the court ruled as follows:

> In light of the jury's findings, the defendants' admissions, the state judge's specific denial of a search warrant as to plaintiff, and the officers' admission that they believed there was no probable cause to detain plaintiff at the gas station, the court finds no reason to alter its original decision on summary judgment that defendants are not entitled to qualified immunity [*see* Ruling and Order (doc. # 43) (holding that, in light of the degree of intrusion evidenced in this case and the state court judge's prior determination that the officers lacked probable cause to search plaintiff, the actions of defendants were not objectively reasonable)].
>
> Accordingly, defendants' motion for judgment as a matter of law, and motion for directed verdict on the grounds of qualified immunity are **DENIED.**

[Doc. # 111 at 1–2.] The court specifically noted that it was not ruling on defendants' renewed motion for judgment, but rather

was deciding the issue of qualified immunity that it reserved at trial. [*Id.* at 2 n. 1.]

Defendants' pending motion therefore renews, postjudgment, the motion made at the close of plaintiff's case, which motion was initially disposed of in two opinions: (1) the Ruling on Motion for Judgment as a Matter of Law issued on November 21, 2002 [doc. # 103]; and (2) the Ruling on Reserved Issue of Qualified Immunity issued on January 10, 2003 [doc. # 111].

### III. *STANDARD OF REVIEW*

▮ A motion for judgment as a matter of law is brought pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. The standard under Rule 50 is similar to the standard for summary judgment under Rule 56. In reviewing a motion for judgment, the court must view the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that the jury might have drawn in its favor. *See Samuels v. Air Transp. Local 504,* 992 F.2d 12, 14 (2d Cir.1993). Thereafter, a court may enter judgment as a matter of law only if: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture; or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded jurors could not arrive at a verdict against the movant. *See Ahern v. County of Nassau,* 118 F.3d 118, 120 (2d Cir.1997). The court may not weigh the credibility of the witnesses or evaluate the weight of the evidence. *Williams v. County of Westchester,* 171 F.3d 98, 101 (2d Cir.1999). Moreover, since granting a motion for judgment would essentially deprive the party of a determination of the facts by a jury, it should be cautiously and sparingly granted. *See Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 59 (2d Cir.1993).

■ A post-trial motion for judgment under Rule 50 is a renewal of an earlier motion made at the close of the evidence, and can be granted only on grounds advanced in the pre-verdict motion. Fed. R.Civ.P. 50 advisory committee's note (re 1991 Amendment, Subdivision (b)) (citing *Kutner Buick, Inc. v. American Motors Corp.*, 868 F.2d 614 (3d Cir.1989)). It cannot assert new grounds; the rules limit the grounds for post-verdict judgment as a matter of law to those "specifically raised" in the pre-verdict motion. *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53–54 (2d Cir. 1993) (citations and internal quotations omitted).

■ A motion for a new trial is brought pursuant to Rule 59 of the Federal Rules of Civil Procedure. Under that rule, a motion for new trial should not be granted unless, in the opinion of the district court, the jury has reached a seriously erroneous result, or the verdict is a miscarriage of justice. *See Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992). Unlike a motion for judgment, a new trial may be granted even if there is substantial evidence supporting the verdict, and the court is free to weigh the evidence. However, a new trial should be granted only if the jury's verdict is egregious. *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 133–34 (2d Cir.1998). As the Court of Appeals has warned, a jury's verdict should rarely be disturbed. *Peggy Farrior v. Waterford Board of Education*, 277 F.3d 633, 635 (2d Cir.2002). The decision to grant a new trial is "committed to the sound discretion of the trial judge." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir.1992).

## IV. *DISCUSSION*

Defendants raise several issues in their postjudgment motion: (1) that the individual defendants are each entitled to qualified immunity; (2) that the court erroneously shifted the burden of proof in this civil damage lawsuit to the defendants on the claim of consent; (3) that the court erroneously precluded the jury from considering the defense theories based on (a) the principles of *Michigan v. Summers*, and (b) an investigative detention; (4) that, as a matter of law, there was sufficient probable cause to arrest plaintiff after the search of 94 Foster Street; (5) that there was insufficient basis to support the verdict against the City of New Haven, or, alternatively, that the jury was misinstructed as to the relevance of State oversight and certification; (6) that the amount of compensatory damages is excessive as a matter of law, and that only an award of nominal damages is supported by the record; and (7) that there is no basis for an award of punitive damages against the individual defendants. [Def.s' Mot. (doc. # 110) at 2–25.] The court addresses each argument, *seriatim.*

### A. *Defendants' argument that the individual defendants are each entitled to qualified immunity*

Defendants argue, primarily, that they are entitled to qualified immunity because the evidence was undisputed that their actions were consistent with the training they received from the City of New Haven and State of Connecticut. Secondarily, defendants argue that there is some legal authority to support their actions and, "Police Officers are not required to anticipate future refinements or other evolution in the law." [Def.s' Mot. at 7 (citing *Kerman v. City of New York*, 261 F.3d 229, 237 (2d Cir.2001)).] Plaintiff responds that defendants mischaracterize this case; that it is an "arrest without probable cause" case, not a *Michigan v. Summers* case; and that the right to be free from arrest absent probable cause, and the prohibition against

exceeding a warrant's limitations, have been established for decades. [Pl.'s Opp. at 4–7.]

Defendants have argued their claim of qualified immunity on several occasions. In its first summary judgment ruling, this court rejected that claim. Specifically, the court held that, because there was clear Second Circuit authority holding that "a seizure accompanied by the degree of intrusion evidenced in this case must be supported by more than a reasonable suspicion of wrongdoing," and because "a state court judge had just determined that the officers lacked probable cause to search [plaintiff]," . . . the actions of defendants Hale and Benedetto were "not objectively reasonable." [Doc. # 43 at 16–17.] Accordingly, the court denied defendants' motion for summary judgment on that ground. [*Id.* at 17.]

The court again considered this issue in its Ruling on Motion for Judgment as a Matter of Law [doc. # 103]. Although "easily reject[ing]" defendants' argument that no constitutional violation occurred, the court noted that defendants' argument on qualified immunity "is a closer call." [*Id.* at 4.] However, because the court had already rejected "a virtually identical argument in denying defendants' motion for summary judgment," defendants had "the burden of showing why the court should stray from its original decision." [*Id.*]

The court analyzed the case law relied on by defendants—specifically *Michigan v. Summers,* 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), which held that a warrant to search for contraband founded on probable cause implicitly car-

ries with it the limited authority to detain the occupants of the premises while a proper search is conducted. In *Summers,* the Supreme Court "approved the detention of occupants of a house being searched as a logical extension of [*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]," which itself was an exception to the probable cause and warrant requirements of the Fourth Amendment. [Ruling on Mot. J. (doc. # 103) at 6.] This court noted, however, that, in the twenty-one years since *Summers* was decided, several courts have held or suggested "that the exception to the probable cause requirement approved in *Summers* did not extend to situations where the police found and transported an individual from another location to the scene of the search." [Ruling on Mot. J. (doc. # 103) at 6–8 (and cases cited within).]

Moreover, although this court did recognize that there is some Second Circuit authority "for applying the *Summers* rule outside the home" [*id.* at 9 (citing *United States v. Fullwood,* 86 F.3d 27, 29–30 (2d Cir.1996))], it also recognized the factual dissimilarity between any authority on which defendants might rely and this case. Indeed, the court found that "arguably all three of the governmental interests noted in *Summers* were present" in *Fullwood,* but "*none* of the governmental interest appear to be present" in our case. [*Id.* (emphasis in original).][3] However, recognizing that certain factual findings by the jury could impact defendants' defense of qualified immunity, the court reserved decision on this defense.

**3.** The governmental interests recognized by the Supreme Court in *Summers* were: "(1) the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found; (2) minimizing the risk of harm to the officers; and (3) the order-

ly completion of the search, which may be facilitated if the occupants of the premises are present." [Ruling on Mot. J. (doc. # 103) at 5–6, n. 4 (citing Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (3d Ed.) § 4.9(e) at p. 645).]

After the jury returned its verdict, the court denied defendants' motion for judgment as a matter of law on their qualified immunity defense. The court relied on the jury's determination that defendants Sullivan, Hale, and Benedetto are liable for compensatory and punitive damages; defendants' admission that plaintiff was immediately handcuffed, transported to the scene of the search, and kept under guard in the police car, still handcuffed[4]; defendants' admission that they believed there was no probable cause to detain plaintiff at the gas station; and the state judge's specific denial of a search warrant as to plaintiff. The court found no reason to alter its original decision on summary judgment [doc. # 43] that defendants are not entitled to qualified immunity. The question now is whether defendants' renewed motion demonstrates such a reason. It does not.

The individual defendants' primary argument is that they are entitled to qualified immunity because their acts were consistent with the training they received, and therefore those acts were objectively reasonable. Defendants' witness testified to this training at trial. As this court explained in its ruling on defendants' first motion for judgment:

> The City's training expert specifically testified that it is *regular practice* that, if New Haven police officers see the target (or suspect) of an investigation at a location different from the place to be searched pursuant to a lawful warrant, they will seize that individual and bring

him to the scene of the search as a matter of course.[5]

[Ruling on Mot. J. (doc. # 103) at 14.] It is this training on which the individual defendants rely for their qualified immunity defense.

The court has already ruled on the illegality of this training. The court held:

> Regardless of any ambiguities in the law that might justify a finding of qualified immunity, it is clearly not the law that police officers may, as a matter of course, seize and transport targets of investigations whenever they have a search warrant related to that investigation. At a minimum, it is a reasonableness determination based on the governmental interests described in *Summers* in relation to the level of intrusion on the suspect. Moreover, exceptions to the probable cause requirement under the Fourth Amendment are just that—exceptions. Just as defendants rely on *Kerman v. City of New York*, 261 F.3d 229, 237 (2d Cir.2001), for the proposition that "reasonable police officer cannot be expected to anticipate developments in the law," nor can police officers or its municipal employer rely on anticipated extensions of exceptions to the probable cause and warrant requirements of the Fourth Amendment.

[Ruling on Mot. J. (doc. # 103) at 14–15.] The court further noted, by way of example, that, "when a Supreme Court decision is written in limiting terms, acknowledging that a general rule exists, but recognizing

---

4. These admissions appears in defendants' Answer. Most, if not all, of the defendants claimed at trial that they had never seen the Answer, and never provided the subject information to their attorney. As the court held in its first ruling on defendants' motion for judgment, "[d]efendants never moved to amend their answer, and it is signed by counsel on behalf of all defendants[; therefore, t]his formal judicial admission is conclusive against

[defendants] in this action." [Ruling on Mot. J. at 10 n. 8 (citations and internal quotations omitted).]

5. The court also noted that, "[o]n a follow-up question by defense counsel, the witnesses specified that the suspect would have to be somewhere 'near' the location of the search." [Ruling on Mot. J. (doc. # 103) at 14 n. 15.]

an exception to that rule, it is not necessarily reasonable to teach or rely on an interpretation that extends that exception beyond that specifically permitted by the Court." [*Id.* at 15 n. 16.]

Given this prior decision, to which this court adheres, the question becomes whether individual police officers are entitled to qualified immunity when they rely on training that is clearly contrary to the law. Although defendants cite no case law on this issue, the court has found several opinions from courts in this Circuit discussing it.

In *Sampson v. City of Schenectady,* 160 F.Supp.2d 336, 349–50 (N.D.N.Y.2001),[6] the court was confronted with similar issues, and similar argument from counsel.

First, the court noted that, like defendants in our case, the *Sampson* defendants relied on a "lack of existing case law directly on point with the instant case." *Id.* at 349. [*Cf.* Def.s' Mot. (doc. # 110) at 7 (noting that defendants have found "no clear cases applying [*Summers*] to precisely the same circumstances at issue in this lawsuit").] However, as the *Sampson* court noted, that "misstates the relevant inquiry." 160 F.Supp.2d at 349.

The Court's concern is not with the fact that no explicit case law expressly declared that [defendant's exact actions were illegal]. Instead, the question is whether "in light of pre-existing case

law," the unlawfulness of that action was apparent.

*Id.* (quoting *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

Second, the defendants in *Sampson*— like defendants in this case—argued that, even if their actions violated clearly established law, the incorrect or negligent training they received gave rise to "extraordinary circumstances" that might still support their qualified immunity claims. *Sampson,* 160 F.Supp.2d at 349. [*Cf.* Def.s' Mot. at 5 (noting that defendants' actions were consistent with city and state training).] On that issue, the *Sampson* court explained the rule that, because an official municipal policy, custom, or negligent training is relevant only to the extent that the policy makes otherwise unlawful conduct reasonable, "it 'of course could not make reasonable a belief that was contrary to a decided body of case law.' " *Sampson,* 160 F.Supp.2d at 350 (quoting *Wilson,* 526 U.S. at 617, 119 S.Ct. 1692).

■ Accordingly, the issue is whether defendants' training was "contrary to a decided body of case law."[7] This court has already held that it is. [Ruling on Mot. J. (doc. # 103) at 14–15 ("it is clearly not the law that police officers may, as a matter of course, seize and transport targets of investigations whenever they have

---

**6.** Although this court discusses only the *Sampson* opinion at length, the issue has arisen, in various contexts, in other courts in this Circuit. *See, e.g., Dunton v. County of Suffolk,* 729 F.2d 903, 907–10 (2d Cir.1984) (noting counsel's potential conflict of interest); *Ricciuti v. New York City Transit Authority,* 796 F.Supp. 84, 88 (S.D.N.Y.1992) (same). *See also Sampson,* 160 F.Supp.2d at 349–50 (cases cited within).

**7.** Although not briefed by the parties, the court recognizes that, because "a municipality is immune from punitive damages" under

42 U.S.C. § 1983, *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), and because an officer may in some circumstances be entitled to qualified immunity based on inadequate training, there may exist an incentive in some indemnification cases such as this to "blame" a constitutional violation on inadequate training by the City rather than on the officers themselves. Because the court upholds the jury verdict awarding punitive damages, it need not address that potential problem in this case.

a search warrant related to that investigation[; a]t a minimum, it is a reasonableness determination based on the governmental interests described in *Summers* in relation to the level of intrusion on the suspect").] Again, it is not because there is binding precedent holding that defendants' exact actions are unconstitutional, but because " 'in light of pre-existing case law,' the unlawfulness [of those actions] was apparent." *See Sampson*, 160 F.Supp.2d at 349 (quoting *Wilson*, 526 U.S. at 617, 119 S.Ct. 1692).

First, as this court held in its ruling on defendants' first motion for judgment, "[a]t a minimum, [the appropriate inquiry] is a reasonableness determination based on the governmental interests described in *Summers* in relation to the level of intrusion on the suspect," not whether these actions can be taken as a matter of course. [Ruling on Mot. J. (doc. # 103) at 14.]

Second, as this court held in ruling on defendants' first motion for judgment, "exceptions to the probable cause requirement under the Fourth Amendment are just that—exceptions." [*Id.* at 14.] Thus, "[j]ust as defendants rely on *Kerman v. City of New York*, 261 F.3d 229, 237 (2d Cir.2001), for the proposition that 'reasonable police officer[s] cannot be expected to anticipate developments in the law,' " neither can police officers and municipal employees "rely on anticipated extensions of exceptions to the probable cause and warrant requirements of the Fourth Amendment." [Ruling on Mot. J. (doc. # 103) at 14–15.] In *Summers*, the Supreme Court articulated several important governmental interests that justified an exception to

the warrant and probable cause requirements. It was not reasonable for the City or its officers to think they could *extend* that exception (by actually bringing plaintiff to the scene of the search) under circumstances where they could articulate the existence of *none* of those governmental interests.·

Finally, regardless of whether, in *general*, defendants' actions were clearly contrary to established case law, the specific facts of this case preclude any finding of qualified immunity. Defendants in this case applied for a warrant to search plaintiff *in advance*, and that application was *denied.* The state judge found that there was no probable cause to search plaintiff. In light of that finding, it was not objectively reasonable to *arrest*[8] plaintiff en route to the search of the apartment. *See Summers*, 452 U.S. at 702, 101 S.Ct. 2587 (specifically noting that the detention of the defendant in that case was "substantially less intrusive" than an arrest). Under the "search incident to arrest" doctrine, officers may lawfully search a suspect incident to arrest. *See, e.g., Chimel v. California*, 395 U.S. 752, 762–763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *See also U.S. v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) ("It is the fact of the lawful arrest which establishes the authority to search"); *U.S. v. Morgan*, 936 F.2d 1561, 1578 (10th Cir.1991) ("*Robinson* stands for the proposition that, after a proper custodial arrest has been made, it is unnecessary to obtain a warrant to search the arrestee's person and clothing be-

---

8. The court has already held that plaintiff was "arrested." [*See* Revised Jury Charge at 37–38 ("as a matter of law, the degree of restriction imposed on [plaintiff] constituted an 'arrest' within the meaning of the Fourth Amendment to the Constitution"); *cf.* Ruling and Order (doc. # 43) at 15 (officers' actions were not objectively reasonable because the Second Circuit made it clear in *United States v. Vasquez*, 638 F.2d 507 (2d Cir.1980) that the "degree of intrusion on [plaintiff's] liberty must be supported by more that a reasonable suspicion of wrongdoing").]

cause it is the arrest that constitutes the significant intrusion under the Fourth Amendment; the search of the person is incidental and does not require additional justification"). Moreover, defendants testified that they did not believe they had probable cause to search or seize plaintiff. It was therefore unreasonable for the defendants to believe that, despite being denied a search warrant as to plaintiff, they had the authority to arrest plaintiff (pursuant to which they would have the authority to search plaintiff).[9]

For all of these reasons, defendants' motion for judgment or new trial on qualified immunity grounds is denied.[10]

B. *Defendants' argument that the court erroneously shifted the burden of proof in this civil damage lawsuit to the defendants on the claim of consent*

Defendants argue that the court erroneously shifted the burden of proof to defendants on their claim of consent. Plaintiff argues that the court properly instructed the jury, but also argues that "consent" is an affirmative defense that defendants waived, and there was not enough evidence to even submit this claim to a jury. Because of the acknowledged split in decisions within this Circuit, the burden of proof issue will have to be decided by the

Court of Appeals, but perhaps not in this case.

The dispute about which party bears the burden of proof on the issue of consent arose at the last minute, as the jury was about to be charged.[11] The court charged the jury that, "in determining whether [plaintiff] consented to accompanying Officers Hale and Benedetto, I instruct you that the defendants have the burden of proving by a preponderance of the evidence that consent was 'freely and voluntarily given.'" [Jury Charge at 38.] This issue was argued by both parties, and the court also conducted its own research. There are three lines of authority on this issue.

One line of authority in this Circuit holds or suggests that plaintiff bears the burden of proof on all issues on a § 1983 claim, including proving non-consent (or lack of probable cause in a warrantless arrest). *See Tierney v. Davidson,* 133 F.3d 189, 196 (2d Cir.1998) ("A further important distinction is that the burden in the state action was on the state to prove that an exception to the warrant requirement applied, whereas here the burden is on [the plaintiff] to establish that the search was unlawful") (citing *Ruggiero v. Krzeminski,* 928 F.2d 558, 563 (2d Cir. 1991)) (discussed *infra* ). *Cf.* 1 L. Sand, *et al.,* Modern Federal Jury Instructions, Inst. 87–74B cmt. at nn. 4–8 ("Although

---

**9.** Although defendants had some information about plaintiff visiting the target apartment from a confidential informant, the only evidence suggesting plaintiff resided at the apartment was found *during* the search, *after* plaintiff was arrested and transported there. In other words, plaintiff was transported to the search of an apartment at which he was not known to reside.

**10.** Defendants also argue that they should not be required to anticipate changes in the law. However, this court's decision is not based on any "change" in the law. Rather, the court relies on well-established principles of law.

It is defendants' position that would constitute a change in the law.

**11.** At trial, defendants also argued that the court erroneously shifted the burden of proving "probable cause" to defendants. The court based its charge on consent and probable cause, in part, on case law holding that a warrantless arrest is presumptively unreasonable. Because it does not appear in their motion, defendants apparently do not challenge the shifting of the burden with respect to the issue of probable cause.

there may be questions regarding the burden of proving an unlawful arrest that underlies a section 1983 claim, the courts seem uniformly to agree that the plaintiff, and only the plaintiff, bears the burden of proving an unlawful search").[12]

A second line of authority in this Circuit holds or suggests that consent (or probable cause in a warrantless arrest) is an issue on which defendants bear the burden of proof. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (holding, in the context of a habeas corpus case, that the government has the burden of proving that the consent was, in fact, freely and voluntarily given)[13]; *Anobile v. Pelligrino*, 303 F.3d 107, 124 (2d Cir.2002) (noting that "consent" was an exception to the warrant requirement, and holding that "[t]he official claiming that a search was consensual has the burden of demonstrating that the consent was given freely and voluntarily") (citing *Schneckloth*, 412 U.S. at 222, 93 S.Ct. 2041); *McCardle v. Haddad*, 131 F.3d 43, 48 (2d Cir.1997) ("... the defendant bears the burden of showing that the search was valid because it fell within one of the exceptions to the warrant requirement ...

The principal exceptions include searches on consent ...") (citing, *inter alia*, *Schneckloth*, 412 U.S. at 222, 93 S.Ct. 2041; other citations omitted); *Raysor v. Port Authority of New York and New Jersey*, 768 F.2d 34, 40 (2d Cir.1985) ("holding that [a] warrantless arrest is presumptively unlawful under New York law," that "plaintiff need not prove either malice or want of probable cause," and that, "[s]imilarly, a deprivation of liberty without 'reasonable cause' is a section 1983 violation as to which the defendant bears the burden of proving reasonableness ...") (citations omitted); *Hernandez v. City of Rochester*, 260 F.Supp.2d 599, 606 n. 6 (W.D.N.Y. 2003) (citing *Raysor* for the proposition that defendants bear the burden of proving lawfulness of a warrantless arrest); *Doe v. Bridgeport Police Department*, No. 3:00cv2167(JCH), 2000 WL 33116540, *4 (D.Conn. Nov. 15, 2000) (Hall, J.) (quoting *McCardle* for the proposition that "the defendant has the burden of showing that the search was valid because it fell within one of the exceptions to the warrant requirement. ... The principal exceptions include searches on consent ..."); *LoSacco*

---

**12.** The comment cites the Second Circuit's decision in *Ruggiero* (*see infra*), a case on which defendants rely. However, this comment does not necessarily support defendants' position. First, the comment adds that, "while the ultimate risk of nonpersuasion would remain with the plaintiff, the defendants might still have the duty of producing evidence of consent or of other exceptions to the warrant requirement." 1 L. Sand, *et al.*, Modern Federal Jury Instructions, Inst. 87–74B cmt. at n. 6. It further adds that "the circuits are not in agreement as to who bears the burden of proving a voluntary consent to a search, something that the Supreme Court has determined is a question of fact to be determined from the totality of all of the circumstances." *Id.* at n. 6.1 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). But, it also cites *Valance v. Wisel*, 110 F.3d 1269, 1278–79 (7th Cir.1997), which acknowledges a split

in the circuits and cites *Ruggiero* for the proposition that the Second Circuit requires defendants only to produce evidence of consent, and does not place on them the burden of persuasion. In any event, this section deals with the burden of proving the illegality of a search. It specifically disclaims the application of the rule to arrests, and, in fact, later argues that, in the arrest context, the burden is on the defendants. [*See infra.*] This adds to the confusion because, although the comment suggests that the law differs depending on whether a search or arrest is at issue, there is case law both ways with respect to both searches *and* arrests. [*See infra.*]

**13.** Although habeas corpus cases are significantly different from § 1983 cases, *Schneckloth* is cited here because it is relied on by other courts in § 1983 actions.

*v. City of Middletown,* 745 F.Supp. 812, 816 (D.Conn.1990) (Nevas, J.) (quoting and relying on *Raysor* ). *Cf.* 1 L. Sand, *et al.,* Modern Federal Jury Instructions, Inst. 87–74A cmt. at nn. 2–5 (noting that, while "[s]ome courts conclude that the burden [of proving unlawfulness of arrests] resides with the plaintiff, ... [o]ther courts seem to impose the burden of proof on the defendant") (citing the Second Circuit's decision in *Raysor* and Judge Nevas' decision in *LoSacco* ).

A third line of authority in this Circuit affirms the validity of a "charge neutral with respect to the burden of proof on consent." *Ruggiero v. Krzeminski,* 928 F.2d 558, 563 (2d Cir.1991). The *Ruggiero* court held that "[i]t is true that searches and seizures conducted without warrants are presumptively unreasonable," but the "operation of this presumption ... cannot serve to place on the defendant the burden of proving that the official action was reasonable." *Id.* Rather, according to that court, "the presumption may cast upon the defendant the duty of producing evidence

of consent or search incident to an arrest or other exceptions to the warrant requirement." *Id.* However, "the ultimate risk of nonpersuasion must remain squarely on the plaintiff in accordance with established principles governing civil trials." *Id.* (citations omitted). Because the trial judge instructed the jury about "the customary burden of proof in a civil action and the requirement that plaintiffs must prove all the essential elements of a section 1983 claim," the Court of Appeals affirmed what it characterized as a "neutral charge." *Id.*[14]

In light of the inconsistent statements in several opinions,[15] defendants have not persuaded the court that its charge was erroneous.[16] At some point, the Court of Appeals may have to resolve the issue of which party bears the burden of proving consent (or the existence of probable cause) in a § 1983 case.[17] However, in light of the evidence submitted to the jury, as explained immediately below, it might not be decided in this case.[18]

14. If given only two choices—burden on plaintiff or burden on defendant—*Ruggiero* would seem to suggest placing the burden on the plaintiff. However, because it affirms an essentially "neutral" charge, the court lists this as an example of a third line of authority.

15. At trial, the court acknowledged the split in the case law, but noted that its charge was consistent with several Court of Appeals' decisions, including the most recent decision, and Judge Sand's Modern Federal Jury Instructions. It is also consistent with the manner in which the issue was raised: at trial, by defendants, without notice to plaintiff, and as an attempt to vitiate plaintiff's claim (much like an affirmative defense).

16. Aside from the split in the case law, the undersigned believes—at least under the facts of this case—that it was appropriate to assign defendants the burden of proving both probable cause and consent. It would be peculiar to place the burden of proving the *absence* of

consent on the individual who was handcuffed and kept under guard in the caged rear seat of a police car. It would also be peculiar to place the burden of proving the *absence* of probable cause on the individual whose name was crossed off the warrant by a neutral and detached state court judge.

17. Of course, different panels of the Court of Appeals *have* decided this issue in different contexts, but, as noted, those opinions are inconsistent, and generally do not recognize the existence of contrary authority.

18. Certainly, it would be helpful to the district courts if the Court of Appeals resolved the conflict. However, this court recognizes that, unless this court is reversed on its alternative ground as well, that resolution would be dictum. On the other hand, even dictum—as long as it recognizes the different lines of authority—would be helpful; and this court respectfully requests that the Court of Appeals offer some guidance on this issue.

Plaintiff argues, and the court agrees, that, regardless of where the burden was placed, there was insufficient evidence to support a jury finding of consent. As plaintiff notes, every defendant officer who testified stated that plaintiff was not free to leave. Also, defendants admitted in their pleadings that plaintiff was immediately handcuffed, transported to the scene of the search, and kept under guard in the police car, still handcuffed. The claim that plaintiff consented to accompany the officers was never asserted as an affirmative defense, never raised in any pleading, and was not argued in the motion for summary judgment. The claim was made for the first time at trial.[19] Indeed, plaintiff argues that defendants have waived this claim by failing to assert it previously. The court need not consider that argument, however, because the court finds that, based on the pleadings (and how this case has been framed over the last five years), and in light of the evidence offered at trial, no reasonable juror could have found that plaintiff's transport to the apartment in handcuffs and under guard was consensual, even if the burden was on plaintiff to prove non-consent. In other words, no reasonable juror could have found that plaintiff failed to prove non-

consent by a preponderance of the evidence. Accordingly, in the alternative, even if the court's charge were erroneous, plaintiff would be entitled to judgment as a matter of law on the issue of consent.

C. *Defendants' argument that the court erroneously precluded the jury from considering certain defense theories.*

Defendants argue that the jury should have been instructed on defense theories permitting brief detentions of individuals based on a "reasonable suspicion" of wrongdoing. Specifically, defendants argue that the evidence could have supported a finding of "reasonable suspicion." Defendants' argument misses the point, however. The court held as early as March 14, 2001, that the degree of intrusion evidenced in this case must be supported by more than a reasonable suspicion of wrongdoing. [Doc. # 43.] Consequently, whether a "reasonable suspicion" existed is immaterial, because the court has held, and reaffirms, that, as a matter of law, "probable cause" was required to support the level of intrusion in this case.[20] The court also reaffirms its prior holding that *Michigan v. Summers* does not apply to the type of seizure pres-

19. On the first day of trial (November 19, 2002), defendant Benedetto testified that plaintiff was pulled over and detained because, if the police found evidence in the Foster Street apartment, plaintiff would be subject to arrest and likely to flee; and the police wanted to prevent that flight. (Defendant Benedetto also testified that plaintiff was placed in the squad car per the order of defendant Sullivan.) Although defendant Benedetto later testified that plaintiff was "free to go," he quickly recanted that testimony when plaintiff pointed out that such testimony was inconsistent with his prior testimony that the police were attempting to prevent plaintiff's flight. Defendant Benedetto then testified that there was reasonable suspicion justifying the detention.

Defendant Hale also testified at the end of the day on November 19, 2002, that plaintiff had consented to the transport and was therefore free to leave whenever he wanted. The next morning, defendant Hale changed her testimony and stated that plaintiff was not free to leave, but maintained that plaintiff willingly accompanied defendants.

20. The defendants in general, and defendant Sullivan specifically, had difficulty recognizing a distinction between "probable cause" and "reasonable suspicion," while testifying at trial. At one point, when plaintiff was inquiring about whether defendants claimed there was "probable cause" or "reasonable suspicion" to detain plaintiff, defendant Sullivan accused plaintiff of mincing words.

ent in this case. Therefore, defendants' motion for judgment or new trial on this ground is denied.

### D. Defendants' argument that, as a matter of law, there was sufficient probable cause to arrest plaintiff after the search of 94 Foster Street

 The jury has found that defendants did not have probable cause to arrest plaintiff after the search of 94 Foster Street. [Revised Jury Interrogatories (doc # 109) at ¶ 15.] Defendants have not shown such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or that there was such an overwhelming amount of evidence in favor of defendants that reasonable and fair minded jurors could not have arrived at a verdict against them on the issue of probable cause. Accordingly, defendants' motion for judgment is denied on this ground. Nor have defendants shown that the jury reached a seriously erroneous result, or that the verdict was egregious or a miscarriage of justice, on the issue of probable cause. Consequent-

ly, this court, in its discretion, denies defendants' motion for new trial on this ground.[21]

### E. Defendants' argument that there was insufficient basis to support the verdict against the City of New Haven, or, alternatively, that the jury was misinstructed as to the relevance of State oversight and certification

 On the issue of municipal liability, there was undisputed evidence (relied on by defendants' counsel on qualified immunity) that the City trains its officers to seize, as a matter of course, individuals thought to be associated with premises for which they have a search warrant. That is unquestionably *not* the law. Even the most liberal reading of *Michigan v. Summers* requires a balancing of several governmental interests, none of which—this court has already noted—were articulated by the defendant officers in this case. The defendant officers testified that their actions were taken pursuant to this faulty training.[22] The City's motion for judgment or new trial is therefore denied.[23]

---

**21.** Jury Interrogatories 15 and 16 were relevant to the quantification of damages. There was a question about whether plaintiff was entitled to damages based on the 23 days he was jailed as a result of the arrest, or whether probable cause arose prior to that jailing. Plaintiff specifically argued, among other things, that a utility bill found in the Foster Street apartment with plaintiff's name on it was insufficient to create probable cause to arrest plaintiff. Given the jury's finding of probable cause in Jury Interrogatory 16 (that probable cause arose after the packets were found in the police car), it is unclear why defendants press this issue.

**22.** The jury found not only that the City had a policy, custom, or practice that caused the deprivation of plaintiff's constitutional rights [Revised Jury Interrogatories (doc. # 109) at ¶ 10(a),(b)], but also that the City failed to adequately train its officers, in that it knew to

a moral certainty that its officers would confront a situation in which a judge denied them authorization to search or seize a person, that such a situation would present the officer with a difficult choice of the sort that training or supervision would make less difficult, and that the wrong choice would frequently cause the deprivation of a citizen's constitutional rights [*id.* ¶ 11(a),(b),(c)]. Although the former finding independently supports an award against the city, the court notes that there was evidence to support the latter finding as well.

**23.** Defendants also argue that the court failed to adequately consider the importance of "State oversight." This court has already held that conformity with state or local rules is no defense to a federal constitutional violation. [*See* Ruling on Def.'s Mot. Recons. (doc. # 69) at 4] (the Constitution is "the *supreme* source of law—to which police officers must

F. *Defendants' argument that the amount of compensatory damages is excessive as a matter of law, and that only an award of nominal damages is supported by the record*

 The jury found that plaintiff was entitled to compensatory damages in the amount of $4,000, representing actual damages suffered as the result of defendants' violation of plaintiff's constitutional rights. [Revised Jury Interrogatories (doc. # 109) at ¶ 12.] The constitutional violation was the arrest without probable cause. The jury also found that there *was* probable cause to arrest plaintiff after the packets of cocaine were found near where plaintiff was sitting in the police car (which charges were later nolled by the state prosecutor). [*Id.* ¶ 16.]

Defendants argue that the $4,000 award is excessive, given the length of time of the violation (which defendants argue was "about fifteen (15) minutes"). [Def.s' Mot. at 23–24]. Defendants provide the court with no authority to support this argument. Plaintiff, however, argues that the

reasonableness of the award is supported by *Oliveira v. Mayer*, 23 F.3d 642, 645 (2d Cir.1994). In *Oliveira*, a jury awarded each plaintiff $20,000 in compensatory damages for an illegal arrest that lasted approximately thirty minutes, and Judge Daly, in the District of Connecticut, entered judgment on that verdict. *Id.* at 644–45. The Court of Appeals reversed in part, on the ground that certain issues relating to qualified immunity should have been submitted to the jury, but left to the "discretion of the District Court whether the jury considering the immunity issue should also redetermine the amount of damages in the event that it rejects the immunity defense." *Id.* at 650. The fact that the Court of Appeals left the damages issue to the district court suggests that the amount was reasonable,[24] as does Judge Daly's acceptance of the award when he denied the defendants' post-trial motions and entered judgment in that amount. Because plaintiff has cited some authority supporting the verdict, and defendants— who carry the burden on this issue—have

---

conform their conduct") (citing U.S. Const. art. VI; *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) (Marshall, C.J.) (emphasis in original)). Moreover, defendants' counsel's argument suggesting that the actions of the defendant officers were the result of "periodic misunderstandings by individual officers" rather than "any defect in the policies or training by the City" is inconsistent with the evidence, and inconsistent with counsel's argument on qualified immunity (where he argued that the officers should be entitled to immunity because "it is undisputed that the actions of the individual defendants ... [were] pursuant to training that permitted temporarily detaining and transporting the target of an investigation while executing a search warrant for a premises nearby, and that such training either was affirmatively taught in both the City and the State Police Academies or was the result of instruction in both the City and the State Police Academies ..."). As such, defendants'

motion for judgment or new trial on the ground that the court failed to instruct on the relevance of "State oversight" is denied.

24. To the extent defendants argue that, as a matter of law, a jury may award only nominal damages when an unlawful arrest lasts only a brief period time and there are no physical injuries, the court disagrees. *See, e.g., Peterson v. County of Nassau*, 995 F.Supp. 305, 323–24 (E.D.N.Y.1998) (and cases cited within, under New York law); *Kerr v. Quinn*, 533 F.Supp. 1329, 1333 (D.Conn.1982) (and cases cited within), *rev'd on other grounds*, 692 F.2d 875 (2d Cir.1982); *Manfredonia v. Barry*, 401 F.Supp. 762, 773 n. 4 (E.D.N.Y.1975) (and cases cited within). However, to the extent defendants' argument is limited to the facts of this case, defendants have failed to direct the court to any authority holding that $4,000 in damages is excessive in cases similar to this. Absent such authority, the court is disinclined to second guess the jury's award of damages.

not, defendants' motion for new trial (or remittitur) is denied.[25]

### G. *Defendants' argument that there is no basis for an award of punitive damages against the individual defendants*

■ Defendants argue that "[t]he same evidence that supports granting qualified immunity to the individual defendants also demonstrates the absence of a basis for awarding punitive damages." [Def.s' Mot. at 25.]

On the issue of punitive damages, the court instructed the jury as follows:

> If you find by a preponderance of the evidence that any individual defendant acted with malicious intent to violate [plaintiff's] constitutional rights or unlawfully injure him, or if you find that a defendant acted with a callous or reckless disregard of [plaintiff's] rights, then you may award punitive damages. An award of punitive damages, however, is discretionary; that is, if you find that legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them. It's up to you.

> In making this decision, you should consider the underlying purpose of punitive damages. Punitive damages are awarded in the jury's discretion to punish a defendant for outrageous conduct or to deter the defendant and others like him or her from similar conduct in the future. Thus, in deciding whether to award punitive damages, you should consider whether the defendant you are considering may be adequately punished by an award of actual damages only, or whether the conduct is so extreme and outrageous that actual damages are inadequate to punish the wrongful conduct. You should also consider whether actual damages standing alone are likely to deter or prevent a defendant from again performing any wrongful acts he or she may have performed, or whether punitive damages are necessary to provide deterrence. Finally, you should consider whether punitive damages are likely to deter or prevent other persons from performing wrongful acts similar to those the defendant may have committed.

> If you decide to award punitive damages, these same purposes should be considered by you in determining the appropriate sum of money to be awarded as punitive damages. That is, in fixing the sum to be awarded, you should consider the degree to which a defendant should be punished for his or her wrongful conduct, and the degree to which an award of one sum or another will deter the defendant or persons like the defendant from committing wrongful acts in the future.

> Such punitive damages may be awarded even in the absence of actual damages; their amount need not be based on the amount of any compensatory damages. In this case, if you find any individual defendant liable to [plaintiff] for a violation of his constitutional rights, you must consider the question of whether to award punitive damages.

> Punitive damages may not be awarded against the City of New Haven.

**25.** In light of the Seventh Amendment concerns, the court construes defendants' motion for judgment that plaintiff "is entitled to a nominal damage award as compensation" as a motion for remittitur or new trial.

[Jury Charge at 60–62.] Defendants do not argue that this charge was erroneous. Moreover, it would not be unreasonable if the jury found that defendants' acts constituted a callous or reckless disregard of the state judge's determination (and plaintiff's rights), found that to be "outrageous conduct," and/or sought to deter defendants and others like them from similar conduct in the future. The jury could have found that defendants willfully disregarded the decision of a neutral and detached state court judge, and, as a result, callously or recklessly disregarded plaintiff's right to be free from unreasonable seizures. The court cannot find that there is such a complete absence of evidence supporting the award of punitive damages, or that there is such an overwhelming amount of evidence that defendants' actions were not so punishable. Nor does the court believe that the jury reached a seriously erroneous result, or that the verdict is a miscarriage of justice. Therefore, defendants' motion for judgment or new trial, on the ground that punitive damages are not warranted as a matter of law, is denied.

## V. CONCLUSION

For the reasons discussed in this memorandum of decision, defendants' renewed motion for judgment, or, in the alternative, new trial [doc. # 110] is **DENIED**, and the **CLERK SHOULD ENTER JUDGMENT ON THE JURY VERDICT.**

This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge [doc. # 24] on June 13, 2000, with appeal to the Court of Appeals.

SO ORDERED.